ROSS & COMPANY *v.* BAXLEY STATE BANK.

No. 8019.   JULY 15, 1931.

*J. B. Moore* and *J. P. Highsmith,* for plaintiffs.
*Wade H. Watson,* for defendant.

BECK, P. J.   Under a power of sale contained in a duly recorded deed to secure a debt, the Baxley State Bank advertised for sale a tract of land conveyed by the deed to the bank by Eli Yoder on January 31, 1928, to secure an indebtedness of $749. J. A. Ross & Company brought their petition for injunction against the bank, seeking

to restrain the exercise of the power of sale, unless it should be sold subject to a turpentine lease held by them from Yoder. This lease was junior to the security deed. Petitioners claimed that the indebtedness to the bank had been settled by Yoder on January 16, 1930, by the execution of a deed to this and other lands in full settlement of all indebtedness of Yoder to the bank; and that the bank was estopped from asserting the security deed as against the lease, because J. W. Tippins, the president of the bank, prepared the lease from Yoder to Ross & Co., attested it as a witness, and did not disclose that the bank held a deed to the land in controversy, although this fact was within his actual knowledge and was unknown to petitioners. After hearing evidence the court refused an injunction, although the plaintiffs offered to give bond, etc. To that refusal they excepted.

Whether this court should hold that the trial court abused its discretion in refusing an injunction depends upon the answer to two controlling questions. The first is, whether or not the evidence required the court to find that the debt of Yoder to the bank had been extinguished by payment. Petitioners claim that it had; that Yoder had executed and delivered a deed to certain lands, including the property in controversy, wherein he conveyed to the bank the title to the property described in the deed of conveyance in settlement of his debt to the bank. The security deed given to the bank was older in date than the lease to Ross & Co. The names of the grantees in the deed which petitioners claim was executed in settlement of Yoder's debt to the bank had not been inserted. Stafford and Whitaker, the vice-president and the cashier of the bank, testified that they were to be named as grantees in the deed, and had bought the land from Yoder for themselves individually. Witnesses introduced by petitioners testified to certain circumstances tending to show that this deed in which the names of the grantees were not stated was intended as a conveyance to the bank. The evidence upon this subject was conflicting; and the court was authorized to find that the deed was intended as a conveyance to Stafford and Whitaker individually.

The next question to be settled is whether or not the bank can execute its power of sale as against the lease of Ross & Co., in view of the fact that J. W. Tippins witnessed the lease from Yoder to Ross & Co.; or was the bank estopped by this fact (Tippins be-

ing the president of the bank) from asserting the priority of its claim over the lease? Tippins testified: "With reference to my connection with petitioners' obtaining lease from Eli Yoder over certain turpentine timber as set out in the fifth, sixth, and seventh paragraphs of said petition, I had nothing to do with the trade in making the lease from Yoder to Ross, except that they came to me to draw the lease. I did not suggest the making of the lease, but they made their own trade and asked me to draw the lease, which I did according to their dictation. As to the lands and timber it covered, I had nothing to do with it except put in said lease just what they suggested, and I was not in any way acting for or in behalf of the Downing Company and was not acting in any way for or in behalf of the Baxley State Bank. At the time of the preparation of said lease I was in the Downing Company's office; just drew the lease as an accommodation to Ross, the plaintiff, and Yoder. While I was at said time and still am president of Baxley State Bank, I am not what you call active president, that is, I am not on a salary and not getting a cent for said position, but the business affairs of said bank are managed by other officials and employees, and at the time of drawing said lease I did not act in any way as a officer of Baxley State Bank, and did not have in mind or was not made aware of the fact that the Baxley State Bank held a security deed over any of the lands and timber covered by said lease." The court could take this testimony of Tippins as true, and under that evidence was authorized to find that in drawing the lease and signing it as a witness he "did not act in any way as an officer of Baxley State Bank, and did not have in mind or was not aware of the fact that the Baxley State Bank held a security deed over any of the lands and timber covered by the lease." According to the testimony, which the court was authorized to find was true, another officer of the bank was the acting manager, and Tippins was not familiar with its affairs, was not an active official of the bank and not in control of it. Under these circumstances, the fact that he drew the lease and signed as a witness did not estop the bank from asserting the superiority of its claim over the petitioners' lease of the lands in question. In view of what is said above, it can not be held that the court abused its discretion in refusing the injunction.

*Judgment affirmed. All the Justices concur.*